**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald Joseph SEMAK, Defendant-Appellant.**

**No. 75–1602.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1976.

Decided June 23, 1976.

Rehearing and Rehearing En Banc Denied Sept. 10, 1976.

Sanford Rosenthal, Donald F. Welday, Jr., Southfield, Mich., for plaintiff-appellant.

Ralph B. Guy, Jr., U. S. Atty., Gordon S. Gold, John Christensen, Detroit, Mich., for plaintiff-appellee.

Before McCREE, MILLER * and LIVELY, Circuit Judges.

McCREE, Circuit Judge.

Defendant-appellant Ronald Semak was found guilty by a jury of embezzling, stealing, taking, and carrying away 270 Firestone tires from an interstate shipment in violation of 18 U.S.C. § 659. The issues on appeal are (1) whether the district court erred in admitting testimony concerning similar acts of defendant and (2) whether the district court committed plain error in failing to give a cautionary instruction to the jury with respect to the testimony concerning the prior similar acts. We determine that the challenged testimony was properly admitted and that the district court was not required to give a cautionary instruction under the circumstances of this case.

The government's proof indicated that on January 9, 1974, a truck driver from Shipper's Dispatch Trucking Company mistakenly delivered a load of 270 Firestone tires to appellant's tire store, the All Tire Company, located at 14644 Greenfield in Detroit, Michigan. The shipping documents for the tires indicated that they were intended to be delivered to a Firestone store located at 14710 Greenfield. It was shown that there was a transposition of numbers on the shipping documents and that the Firestone store was, in fact, located at 14170 Greenfield.

The truck driver testified that he delivered the tires to the All Tire Company, and that upon arriving at the store, he showed Semak the bill of lading. He further testified that upon asking whether Semak was the intended recipient of the shipment, he was assured by Semak that: "yes, this is the right place and we have been expecting you." The truck driver and one of Semak's employees testified that Semak helped to unload the shipment of tires.

* Judge Miller died April 12, 1976 and did not participate in this opinion.

Semak's employees also testified that later in the day they delivered the tires to the Arrow Tire Company in Garden City, Michigan, a Detroit suburb located approximately 12 miles from Semak's store. Baker, one of the employees, testified that Semak returned to his store at about 9 p. m. Upon his arrival, Baker testified that Semak came into the store and said "we really made it big today." He then gave Baker $220, gave the other employee $100, and gave Semak's girlfriend, who had assisted in the delivery of the tires to the Garden City store, another $100.

During the course of the government's case in chief, Baker was asked whether other goods that were intended for the Firestone store located two blocks south on the same street had been mistakenly delivered to the All Tire Company. Over objection, the witness testified that batteries, shock absorbers, floor mats, a sign, and some peg boards had been received at the All Tire Company and that these items were destined for the Firestone store located at 14170 Greenfield.

Both of Semak's employees and his girlfriend testified that they were instructed by Semak to deny any knowledge of misdelivery of the tires should government investigators ask any questions.

FBI agent Torgler also took the stand to testify that when he visited the store to investigate the tire theft he saw certain receipts for items purchased on January 9, 1974. Torgler said that Semak would not surrender the receipts until a subpoena was obtained. When Torgler returned four days later with the subpoena, he was told that the records had been lost. During Torgler's direct examination, the government introduced into evidence a box containing perforated display models that was addressed to the Firestone store. Torgler testified that he found the box in Semak's store during a consent search conducted about February 1, 1974.

Mr. Semak was the only witness for the defense. He denied any involvement in the theft of the tires. He conceded that it was possible that he had been at the store on the day of the shipment, but he said that he was unaware of the shipment of the tires.

The jury returned a verdict of guilty on September 6, 1974. On February 3, 1975, the district court sentenced Semak to serve two years under the provisions of 18 U.S.C. § 4208(a)(2).

In this appeal, the primary issue is whether the district judge erred in admitting testimony by the government's witness concerning prior similar acts. We have exhaustively reviewed the applicable law in a recent case. *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975). In that case, involving a prosecution for mailing threatening letters, the government introduced evidence that the defendant had previously threatened persons. Because we determined that intent was not at that point a genuinely contested issue in the case, we held that the government could not avail itself of the "intent" exception to the general rule that testimony of prior similar misconduct may not be introduced in the prosecution's case in chief.

We recognize that "[a]s a general rule, in jury trials, evidence of a criminal defendant's prior misconduct is inadmissible in the prosecution's case in chief to show the accused's bad character or criminal propensity." 513 F.2d at 1004. Nevertheless, evidence of a defendant's prior misconduct is admissible to show motive, intent, or absence of mistake whenever any one of these is material in a prosecution, and there exists a dispute about it.

The question in this case is whether Baker's testimony about other misdeliveries was properly admitted to show defendant's intent or absence of mistake. Unlike the *Ring* case, intent here is a genuinely contested issue that appears in the prosecution's case in chief. In *Ring* we said that if the mailing of threatening letters was shown, the intent necessary for the crime could be inferred from that act. 513 F.2d at 1008. In this case, however, the essential element of intent or guilty knowledge cannot be inferred from proof of the fact that 270 tires were delivered to the wrong address. Professor Wigmore stated it this

way: "The act of possession is in this class of cases [knowing possession or receipt of stolen goods] (except rarely) conceded, and the question is as to the criminal intent, and specifically, as to the knowledge accompanying the possession." 2 J. Wigmore, Evidence § 324 (3rd ed. 1940). *See United States v. Ring, supra*, at 1007, and *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901).

■ The rationale behind this exception to the rule excluding evidence is that the recurrence of similar acts incrementally reduces the possibility that the given instance of illegal possession is the result of inadvertence, mistake, or other innocent event. "[T]he argument is that the oftener A is found in possession of stolen goods, the less likely it is that his possession on the occasion charged was innocent." 2 J. Wigmore, Evidence § 325 (3rd ed. 1940).

■ We hold that the government, in order to prove that appellant had the intent to permanently deprive the rightful owner of the tires, could show similar acts. We believe this holding is consistent with our decision in *Ring* because not only is "intent" a genuinely contested issue in this kind of case, but also it cannot be inferred solely from the fact of possession. We also believe that our holding is consistent with the rationale of the rule allowing evidence of similar acts. Appellant's possession of misdelivered goods on other occasions had probative value about his intent concerning the 270 tires. This evidence would ordinarily be excluded because, although it is probative of criminal intent, its prejudicial impact is thought to outweigh its probative value. Nevertheless, since appellant's possession of these tires could have been innocent, a genuine dispute about his intent existed, and the exception to the rule permitted the introduction of proof of similar receipt and conversion of other misdelivered goods. Of course, if after the close of the government's case in chief a defendant introduces evidence of mistake or other lack of intent, it is permissible for the government to show similar acts on rebuttal.

■ Appellant also contends that the district judge erred when he admitted the challenged testimony, and then did not give an instruction cautioning the jury to consider the evidence of other acts only for the purpose of determining whether defendant acted intentionally. Defense counsel at trial objected to the admission of the testimony, but he did not seek a cautionary instruction from the district judge. Defense counsel also failed to request inclusion of a cautionary instruction in the court's charge to the jury. Accordingly, unless the court's failure to give the instruction constitutes plain error, F.R.Crim.P. 52(b), we should not overturn the conviction.

We have reviewed the authorities and have found that most of the cases hold that it is not plain error for a district court not to give cautionary instructions when testimony of similar acts is properly admitted. *United States v. Pitman*, 475 F.2d 1335 (9th Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 146, 38 L.Ed.2d 92 (1973), *United States v. Thomas*, 148 U.S.App.D.C. 148, 459 F.2d 1172 (1972), *Harrison v. United States*, 387 F.2d 614 (5th Cir. 1968), *but see United States v. McClain*, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971). Although our court has not addressed this issue, we have held that it is constitutional error to admit prior felony convictions in support of a charge that a defendant is an habitual offender unless the court gives a limiting instruction, even in the absence of a request for one. *Dawson v. Cowan*, 531 F.2d 1374 (6th Cir. 1976), *Evans v. Cowan*, 506 F.2d 1248 (6th Cir. 1974).

■ Although we believe that it is better practice in a case such as this one for the district judge to give, *sua sponte*, a limiting instruction, we find it unnecessary to decide whether the failure to do so is error because if error had been committed here, it would be harmless under both Rule 52 of F.R. Crim.P. and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We regard the proof of appellant's guilt as so overwhelming that any possible error resulting from the failure to have given a cautionary instruction was harmless beyond a reasonable doubt.

The judgment of conviction is AF-FIRMED.