**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Justina LOWE, Catherine Bradbent, et al, Thomas W. Crimmins, Keith Frederickson, Daniel Hewins, Holly Hill, Erik Lorentzon, Kerry MacLane, Franz Meynert, Laura Perz, Lee Ann Platz, Michael Taylor, Fran Williams, Eleanor Wind, Boyd Alcorn, et al, William Bichsel, Nancy Bidgood, Suzanne Cook, Micah Gampel, Nora Leetch, Lyn Magnuson, William Martell, Richard Mercy, Jane Pulsifer, Thomas Rawson, Jerry Seese-Green, Vip Short, Ellen Skinner, John Woods, Ira Zbarsky, Defendants-Appellants.**

Nos. 80–1231, 80–1268 to 80–1281, 80–1283, 80–1284, 80–1286 and 80–1288 to 80–1299.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1981.

Decided Aug. 24, 1981.

Irwin H. Schwartz, Federal Public Defender, Seattle, Wash., for Lowe.

Howard Ratner, Seattle, Wash., for Wind.

Thomas Nast, Seattle, Wash., for other defendants.

Francis J. Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

**CHOY, Circuit Judge:**

## I. Introduction

Appellants participated in a pre-arranged entry upon the Naval Submarine Base at Bangor, Washington, to protest the Government's maintenance of the Trident weapons system. Their joint trials, convictions, and respective sentences and probation terms give rise to the several issues in this consolidated appeal. We affirm all the convictions and remand for adjustment of only the sentence imposed upon appellant Lowe.

## II. Facts

In October of 1979, appellants (hereinafter also called "defendants") and others who shared in their beliefs staged a demonstration at Bangor. During the demonstration, which was one of a series there, 110 protestors climbed over a boundary fence and were arrested without resistance as they walked toward the base. They were charged by information with violation of 18 U.S.C. § 1382, which prohibits, *inter alia*, entry upon Navy property for any purpose prohibited by regulation.

Two trials followed: Defendants under age 26, who were subject to the Youth Corrections Act (YCA), were given a jury trial, and those over 26 were given a bench trial. All defendants admitted intentional, non-permissive entry upon the base, and the principal defense attempted at both trials was one based on necessity and international law. The district judge disallowed presentation of this defense as a matter of law.

All defendants were convicted and fined and sentenced variously, apparently depending upon the age and prior record of each. Lowe, sentenced under the YCA, was given an indeterminate sentence of up to six years. Adult offenders were given up to six months, the statutory maximum. Most of the sentences were suspended, and appellants were ordered, as a term of probation, not to come within 250 feet of the base regardless of whether they had permissive use of private property within that 250-foot radius. This probation term prevented them from engaging in otherwise legal anti-Trident activities which were regularly conducted around the perimeter of the base, including distributing leaflets on the adjoining public roadway and attending weekly meetings at "Ground Zero," a gathering place on private property adjacent to the base.

## III. Issues

The following issues are presented on appeal:

### A. Youth Corrections Act

1. Whether YCA commitment for a longer term than the maximum adult sentence for the same offense is permissible.

2. Whether the offense as applied to Lowe is an infamous one requiring a grand jury indictment, where the potential YCA sentence is for more than one year.

3. Whether Lowe's decision to proceed pro se was knowingly and intelligently made, where the magistrate did not specifically inform her of the potential six-year YCA sentence.

4. Whether YCA commitment was appropriate where the trial court made no express finding of benefit to Lowe.

B. *Basis for Sentencing*

1. Whether the trial court relied on the erroneous assumption that Wind had been involved in prior criminal trespass activity.

2. Whether Wind's sentencing properly proceeded absent a pre-sentence report.

C. *The Necessity Defense*

Whether the trial court erred in prohibiting presentation of the defenses of necessity and international law.

D. *The Probation Condition*

Whether the probation condition prohibiting entry upon public and private property within 250 feet of the base was proper.

IV. *Discussion*

A. *Youth Corrections Act*

[1] Since the trial and sentencing of Lowe, this court has decided in *United States v. Amidon*, 627 F.2d 1023 (9th Cir. 1980), that the YCA was not intended to impose longer sentences upon youthful misdemeanants than would be available for adults convicted of the same offense, regardless of the rehabilitative purpose of such an extended sentence. Counsel for Lowe and the Government concede that *Amidon* is controlling in this case and that Lowe's six-year sentence must be set aside. We agree. Because the record does not clearly indicate what sentence the trial judge would have imposed had he known the six-year YCA sentence was unavailable, we remand for resentencing. The six-year sentence being hereby set aside, the questions of whether an indictment was required and whether the decision to proceed

pro se was made with full understanding of the potential six-year sentence are moot.

Lowe also contends that a YCA sentence may not be imposed without an explicit finding that the defendant will benefit from YCA treatment. We decline to speculate as to whether the trial judge will again find a YCA sentence appropriate in Lowe's case given the proscription in *Amidon* against extending YCA sentences beyond the maximum adult term. Accordingly, we do not decide the question of whether a benefit finding is necessary in YCA cases.

B. *Basis for Sentencing*

Wind argues that her sentence was premised on erroneous information and that she was prejudiced by the absence of a pre-sentence report. The record indicates that the trial judge imposed prison terms upon defendants with a history of prior fence-climbing. Those who had never before engaged in such activity were given suspended sentences and probation. Wind was given a 45-day sentence of imprisonment. She claims that the trial judge erroneously considered her prior arrest for crossing the fence at Bangor, since the charge stemming from that incident was dismissed.[1] Wind claims the trial judge was mistaken when he gave her the same type of sentence as those defendants who had prior convictions.

█ Wind, who represented herself below, informed the trial judge that she had climbed the fence at Bangor before. She also told him that the charge was dismissed. The record shows that Wind had full opportunity to explain her prior activity at Bangor.[2]

---

1. Wind states on appeal that the charges stemming from an earlier May 22, 1978 protest were dismissed under the authority of *United States v. Patz*, 584 F.2d 927 (9th Cir. 1978) (holding that conviction under 18 U.S.C. § 1382 may not be premised upon state law). She thus argues that her prior activity was not criminal. The Government suggests that the prior activity was criminal but that the charge was defective. In either case our analysis here remains the same.

2. The exchange between Wind and the court at sentencing included the following:

THE COURT: Prior to last October, had you ever been to the Trident Submarine Base at Bangor, Washington?

DEFENDANT WIND: Yes.

THE COURT: When and for what purpose?

DEFENDANT WIND: I went there on May 22nd to go over the fence.

The trial judge has broad discretion in sentencing decisions. *See United States v. Wylie*, 625 F.2d 1371 (9th Cir. 1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). While Wind argues that the judge mistakenly believed her prior conduct was criminal, this is not clear from the record. The judge knew the charge against Wind was dismissed. The judge could have considered her prior protest activity as indicative of the depth of Wind's commitment and the likelihood of a repeat offense. The deterrent effect of a short prison term may have seemed necessary to reduce this likelihood. Thus, the prior conduct, even if it was not found criminal, could legitimately have been considered in the sentencing decision. *Cf. United States v. Morgan*, 595 F.2d 1134, 1135–1137 (9th Cir. 1979) (sentencing judge may consider wide range of information, including underlying facts relating to prior acquittals). Absent any indication that the trial judge used the fact of Wind's prior activity for an impermissible purpose, or that he was otherwise misinformed, we have no basis for vacating the sentence. *Cf. Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir. 1978) (sentence upheld where there was no affirmative evidence that the sentencing judge relied upon false information).

█ In addition, Wind contends that the trial judge would not have been misled by her prior arrest if a pre-sentence report had been made. She further contends that her failure to request a pre-sentence report should not be held against her because she was a pro se defendant. Because we find no evidence of reliance on erroneous information, and because Wind does not suggest any other way in which a pre-sentence re-

port would have changed the sentence imposed, we need not reach the question of whether the trial court properly relied upon Wind's waiver of a pre-sentence report. We hold that Wind's sentence was within the discretion of the trial court. The sentence is hereby affirmed.

### C. *The Necessity Defense*

█ Defendants stipulated to the facts of the offense. Their only defense was that their actions were justified because the Trident system would lead to the devastation of civilization and because the 'system constituted aggressive warfare in violation of international law. Thus, under the common law principle of necessity, defendants argued that their unlawful actions were necessary to prevent a greater, imminent harm.

Defendants submitted this defense in trial briefs and made an offer of proof as to the facts they hoped to prove in support of the defense. The trial court disallowed the defense as a matter of law and refused to receive supporting evidence which would have included expert testimony on the dangers of nuclear proliferation. Those tried to a jury were not allowed to argue the necessity defense to the jury.

In a similar case arising out of earlier Trident protests, this court rejected the defense of necessity. *United States v. May*, 622 F.2d 1000 (9th Cir.) *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980). This court in *May* found no direct harm to the protestors which would trigger a necessity defense. Further, this court characterized the defense as a "back door"

THE COURT: Did you go over the fence on May 22nd?
DEFENDANT WIND: Yes, I did.
THE COURT: Were you convicted of that charge?
DEFENDANT WIND: No. The charges were dismissed.
THE COURT: All right. Have you ever been arrested prior to that time?
DEFENDANT WIND: No.
THE COURT: Before I pronounce sentence, is there anything that you'd like to say with respect to the charges against you?

DEFENDANT WIND: Yes.
THE COURT: All right.
DEFENDANT WIND: When I went over the fence I was carrying this poem in my heart. It's called "A Mountain Woman's Dream.":
(Poem read by Defendant Wind.)
THE COURT: Anything further to state to the Court.
DEFENDANT WIND: No.

attempt to attack government programs in a manner foreclosed by the standing requirement of *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Appellants would distinguish *May*, noting that in *May* the district court had allowed a full presentation of the necessity-international law defense and that the Ninth Circuit panel had a complete factual record upon which to base its finding that the defense was insufficient.

Defendants did not proffer evidence that conditions have changed significantly since the *May* case was decided. Their offers of proof did not indicate that new evidence would be submitted which would negate the reasoning in *May*. Accordingly, the trial judge properly relied on *May* in holding that, as a matter of law, the necessity defense could not succeed. It was not necessary for the judge to receive evidence already held legally insufficient by this court. It was enough that he considered the trial briefs and allowed the offers of proof. On this record we hold, as did the trial judge, that the necessity defense could not possibly prevail. The convictions of defendants are affirmed.

### D. *The Probation Condition*

■ The court below suspended the sentences of those defendants without prior records and imposed a probation term forbidding them to come within 250 feet of the base. The court knew that defendants would thereby be unable to distribute literature to Bangor employees on the public roadway at the entry to the base or to attend weekly meetings at Ground Zero. Defendants argue that the probation term violated their first amendment rights of free speech and association.

This court has recognized that the sentencing judge has broad discretion in setting probation conditions. *See United States v. Consuelo-Gonzalez*, 521 F.2d 259, 264 (9th Cir. 1975). Exercise of this discretion is reviewed carefully where probation conditions restrict fundamental rights, but such restriction is permissible. *Id.* at 265.

The test for validity of probation conditions, even where "preferred" rights are affected, is whether they are primarily designed to meet the ends of rehabilitation and protection of the public. *Id.* at n. 14. Similarly, this court has stated that

The conditions must be "reasonably related" to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement. (Citation omitted.)

*United States v. Pierce*, 561 F.2d 735, 739 (9th Cir. 1977).

In *Malone v. United States*, 502 F.2d 554 (9th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975), this court upheld probation conditions which restricted free speech and association. In that case the probationer, who was convicted for illegal arms exportation, was forbidden from associating with any Irish or Irish Catholic organizations, from visiting Irish pubs, or from participating in the American Irish Republican movement. The court found that these limitations were reasonably related to the accomplishment of public order and safety. *Id.* at 557. In *Malone* the sentencing court found it necessary to limit the defendant's contacts with the Irish community because the defendant's gun-running activities evolved from uncontrollable motivations and emotions. Because defendants in this case acted deliberately rather than emotionally, they argue that limitations on their movement and association do not serve the ends of rehabilitation or deterrence. We disagree.

Precisely because defendants here acted purposely, it is likely that they will be disinclined to cross the 250-foot line. The probation condition reasonably meets the goal of keeping the peace and deterring further criminal activity. The sentencing judge did not forbid participation in the anti-nuclear movement, nor did he forbid further anti-

Trident speech. Rather, he forbade approach to the base. Climbing the fence was the particular offense he intended to prevent. Keeping the defendants away from the fence was a logical means of prevention.

Appellants argue that the 250-foot limit is arbitrary and that there is no reason to choose 250 feet over a greater or lesser distance, or a simple proscription against further fence-climbing. Absent compelling reason for appellate interference, the task of line-drawing in probation matters is best left to the discretion of the sentencing judge. Given the alternatives of imprisonment or some other greater restriction upon appellants' movements, speech, and association, the 250-foot limit is reasonable. It is not so great as to prevent all protest activity; yet it allows law enforcement officials a buffer zone in which to detect probation violations and discourage repeat offenses before would-be trespassers are upon the fence. While such limitation would, of course, be improper if imposed upon the ordinary citizen, probationers "properly are subject to limitations from which ordinary persons are free." *United States v. Consuelo-Gonzalez*, 521 F.2d at 265. The probation condition is affirmed.

### V. *Conclusion*

The convictions of all appellants, the probation condition imposed on those who received suspended sentences, and the sentence imposed on Wind are AFFIRMED. Lowe's sentence is vacated and that case REMANDED for resentencing.

BOOCHEVER, Circuit Judge, concurring in part and dissenting in part:

In this case a probation restriction against approaching the Trident Submarine Base, although innocuous on its face, infringes on the fundamental constitutional rights of freedom of speech and freedom of assembly. I respectfully dissent from that portion of the majority opinion which upholds the probation condition, although I concur in the remainder of the opinion.

Unlike the selfish motivation for most criminal conduct, the actions of the defendants in this case are based on a desire to publicize their belief that a federal program threatens the public welfare. By unlawfully trespassing they have violated the law and may properly be punished. 18 U.S.C. § 1382. Insofar that they seek by lawful means to inform members of the public of their views, however, their activities are in accord with our country's fundamental heritage of permitting free expression, even of unpopular views.

The center at which the protestors met is a privately owned building known as "Ground Zero," located within 250 feet of the fence surrounding the base. Moreover, only when cars stop at the entrance to the base is there a viable opportunity to offer literature to those entering the base. The probation condition thus substantially impedes the defendants' first amendment rights of freedom of expression and assembly.

I agree with the majority's statement that ordinarily "line-drawing in probation matters is best left to the discretion of the sentencing judge," majority opinion at 568 *supra*, but our opinions make it clear that careful review is required of probation conditions that infringe on the lawful exercise of first amendment rights. As the court stated in *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975) (en banc), although conditions infringing constitutional rights are certainly not presumed impermissible,

> [c]onditions that unquestionably restrict otherwise inviolable constitutional rights may properly be subject to special scrutiny to determine whether the limitation does in fact serve the dual objectives of rehabilitation and public safety.... [I]t is necessary to recognize that when fundamental rights are curbed it must be done sensitively and with a keen appreciation that the infringement must serve the broad purposes of the Probation Act.

This concern is reflected in *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975), where we noted that such restrictions are permissible when nec-

essary "to accomplish the essential needs of the state and public order."

This issue has arisen in the related area of restrictions on the first amendment rights of prisoners. Recently in *Wheeler v. United States*, 640 F.2d 1116 (9th Cir. 1981), we considered a postsentencing order that prevented a prisoner from communicating with ten named individuals. We stated that:

> *Procunier* [*Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)] . . . permits an invasion of a prisoner's fundamental constitutional right of free speech only where the intrusion is so tailored that it furthers the substantial governmental interest without unduly interfering with the prisoner's First Amendment freedoms.

Id. at 1126.

I do not believe the probation condition in this case is tailored to meet either a goal of rehabilitation or public safety. "A balancing approach has been articulated so as to facilitate an accommodation between the practical needs of the probation system and the constitutional guarantees of the Bill of Rights." *United States v. Pierce*, 561 F.2d 735, 739 (9th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978). Here we must balance the probational benefits against the restriction on the exercise of first amendment rights.

The conduct sought to be prohibited in this case is unlawful trespass on the submarine base. Prohibiting presence within 250 feet of the fence surrounding the base has, at best, a marginal relationship to protection against trespass. As aptly stated by the appellants:

> The Trident base is not a lettuce patch into which protestors jump, rabbit-like, upon sight. No planned legal leafletting or demonstration has ever ripened into an illegal one. Acts of trespass are planned months in advance . . . .

Thus the probation condition has only a highly tenuous connection to protection of the public.

Moreover, the condition has no bearing on the rehabilitation of the defendants, the other prong on which it must depend for its validity. Unlike the judge in *Malone*, the court here did not believe that it was necessary to hinder the appellants from associating with one another or to prevent them from protesting against the Trident program. Consequently the prohibition against exercising the rights of association and expression in a particular area, whether it is 250 feet, 300 feet or several miles away from the base, has no effect on rehabilitation.

Weighing the minimal probational benefits against the infringement imposed, it is clear that the prohibition strikes at the core of constitutional rights vital to the fabric of our political system, which permits free criticism of governmental decisions. By this relatively innocuous appearing condition, the appellants' right to protest and seek change is substantially muzzled. The application of any balancing test results in the conclusion that under the circumstances of this case the restriction is unwarranted. I would reverse the imposition of the probation condition.