Edward Markley, a Catholic priest, appeals from the order and judgment of the circuit court revoking his probation. Markley had initially been convicted in circuit court of burglary in the second degree and criminal mischief in the first degree. Judgment and sentence were thereafter imposed. Markley made formal application for probation and, following a hearing, the appellant was sentenced to two consecutive five year terms. Upon hearing argument for the appellant and his counsel, the appellant was placed on probation. Notice was given to the appellant that he was in violation of the terms of his probation and a hearing was conducted in circuit court thereon. The appellant's probation was then revoked and this appeal follows.
The Circuit Court of Jefferson County filed a memorandum opinion in this cause and the same is hereinafter quoted. (R. 186-195)
 STATE OF ALABAMA, Plaintiff vs. EDWARD MARKLEY, Defendant CC 842862 "IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA TENTH JUDICIAL CIRCUIT "MEMORANDUM OPINION
"On April 30, 1985, following a jury trial in the Circuit Court of Jefferson County, Alabama, Father Edward Markley, a Catholic priest from Saint Bernard's Abbey in Cullman, Alabama, was found guilty of burglary in the second degree and criminal mischief in the first degree.[1] The incident which led to Father Markley's arrest and conviction involved his participation in an anti-abortion demonstration which took place at the Birmingham Women's Medical Clinic, a private clinic specializing in pregnancy testing, counselling and abortions. Father Markley unlawfully entered the clinic and destroyed medical equipment and property with a sledgehammer. After the verdict was read, imposition of sentence was suspended pending a presentence investigation. At this time, the defendant made formal application for probation.
"On July 1, 1985, a probation and sentencing hearing was held before this Court. After pronouncing sentence of two consecutive five year terms, the Court considered arguments from counsel for the defendant and from the State on whether the defendant should be placed on probation. In deciding *Page 1045 
whether or not to grant probation, the Court was mindful of the unusual and ironic circumstances presented in this case. The defendant was a convicted felon who also happened to be a Roman Catholic priest. While the Court could not condone the actions of a person who utilized violence and willfully destroyed the property of others, the Court recognized that Father Markley's actions were motivated by a sincere belief in the righteousness of his cause. The Court also considered numerous requests for leniency from citizens who believe in Father Markley.
"Because of the Court's concerns regarding the defendant's past behavior, his propensity to violence whenever he participated in anti-abortion activities, the Court conditioned probation on the following special terms:
" 'Probationer is prohibited from knowingly going within 500 yards of the Birmingham Women's Medical Clinic, Summit Medical Clinic, or any other clinic that performs such surgery for the purpose of picketing in any form or fashion or manner; including but not limited to carrying signs or making utterances at any clinic within the fifty states of the United States of America. He may retain membership in any organization he belongs, but he may not actively participate in any endeavor that would bring him in violation of the Court's Order.'
"The Court imposed these restrictions because it felt that they were reasonably necessary to ensure that the defendant would not commit similar criminal acts in the future.
"This case is now before the Court on the motion of the State for revocation of probation. The evidence is all but overwhelming that Father Markley has violated the special terms of his probation. The witnesses testifying at the probation revocation hearing included employees of the Birmingham Women's Medical Clinic, the Summit Medical Center in Birmingham and the Women's Community Health Center in Huntsville. These persons all testified that they had observed Father Markley participate in an anti-abortion march and go within as close as two to three feet to the clinic. One of the witnesses also stated that she observed Father Markley carrying a sign and distributing leaflets near the clinic. The State also introduced two photographic exhibits which depict Father Markley participating in the anti-abortion marches outside the Summit Medical Center.
"The defendant does not dispute that he participated in activities which the court expressly forbade as a condition of probation. At the hearing, the court asked the defendant to read a newspaper account describing the alleged incidents. Father Markley read the article in open court and attested to the accuracy of the report:
" 'Reverend Edward Markley said yesterday he won't turn himself in for probation violation although a warrant has been issued for his arrest. "They will have to come and get me," Markley said.'
" 'The Roman Catholic priest was ordered to stay at least 500 yards from any abortion clinic in the U.S. "I will not just turn myself in," Markley said yesterday from St. Bernard's Abbey in Cullman. I was advised to do that before, to be sweet and amicable, but this isn't right, so I am not going to cooperate.' "
" 'Markley participated in abortion protests near abortion clinics in Birmingham January 18th and in Huntsville January 24th.' "[2]
"Father Markley also admitted that, at the time he participated in the above mentioned activities, he knew that he was technically in violation of the special terms of his probation; however, he felt that there was a conflict between the conditions imposed and the law of God, and that he was not in violation of the true law, the law of God."
 "DISCUSSION
"At the revocation hearing, counsel for defendant devoted most of their time to discussion of the unreasonableness of the restrictions, rather than to the factual issue of whether or not the terms of the probation *Page 1046 
were violated. Counsel for the defendant/probationer discussed the condition which prohibits probationer from 'knowingly' going within 500 yards of the Birmingham Women's Medical Clinic, Summit Medical Clinic, or any other clinic that performs such surgery for the purpose of picketing in any form or fashion or manner 'as excessive and unreasonable because that condition would also prohibit Father Markley from being present at Holy Family Church, if he knows that people will be picketing at Community Hospital, which performs abortions next door to Holy Family Church.' This argument is without merit. Father Markley could attend the Church without violating the terms of his probation. The restrictions clearly state that he cannot go within 500 yards of a clinic that performs abortions or such surgery 'for the purpose of picketing in any form or manner.' He can travel freely within the proscribed boundaries for any reason other than for the prohibited activities. Moreover, he is free to participate in these activities so long as he does so outside the proscribed boundaries.
"In formulating these restrictions, this Court attempted to satisfy society's legitimate interest in deterring further criminal activity without unduly impinging upon the probationers fundamental rights to free speech and association. The purpose of probation is rehabilitation and the imposition of special probation conditions should be framed to meet the particular needs of each individual case, 28 A.L.R.4th 729. To that end, this Court informed the probationer that he might retain his membership in any organization he belongs, but that he may not actively participate in any endeavor that would bring him in violation of this Court's order.
"Because the defendant had been involved in several anti-abortion demonstrations that resulted in violence, this Court felt that the restrictions imposed were reasonably necessary to safeguard the public.
"In the case of United States v. Lowe, 654 F.2d 562 (1981), the Ninth Circuit Court of Appeals upheld similar restrictions. There, the Court recognized the validity of probation conditions which restrict fundamental rights. The test is, whether the probation conditions are primarily designed to meet the ends, the ends of rehabilitation and protection of the public.
"Consideration must be given to the following: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement.
"In U.S. v. Lowe, the defendants-appellants and others, with shared beliefs, staged a demonstration at the Naval Submarine Base at Bangor, Washington to protest maintenance of the Trident weapon system. While demonstrating, 110 of the protesters climbed over a boundary fence and were arrested without resistance as they approached the base.
"All defendants were convicted, fined and accorded a variety of sentences. Most of the sentences were suspended and appellants were ordered, as a term of probation, not to come within 250 feet of the base regardless of the fact that they had permissive use of private property within the 250 foot radius. This probation condition prevented the appellants from engaging in otherwise legal protest activities which were regularly conducted near the base. U.S. v. Lowe, 654 F.2d at 564.
"Applying the above-mentioned test, the Court concluded that 'precisely because defendants here acted purposely, it is likely that they will be disinclined to cross the 250 foot line' and therefore, 'the probation condition reasonably meets the goal of keeping the peace and deterring further criminal activity.' U.S. v. Lowe, 654 F.2d at 567.
'The appellants argued that the 250 foot limit was arbitrary, that it was unreasonable to select that distance over a greater or lesser distance in order to curtail any future fence climbing.
"The Court held that the 250 foot limit was not unreasonable in light of the unlawful activities of the defendants. The Court stated that 'absent compelling reason for *Page 1047 
appellate interference, the task of line-drawing is best left to the discretion of the sentencing judge' and that 'given the alternatives of imprisonment or some other greater restrictions upon appellants' movements, speech and association, the 250 foot limit is reasonable; it is not so great as to prevent all protest activity; yet it allows law enforcement a buffer zone in which to detect probation violations.[3]
"Also in United States v. Consuelo-Gonzalez, 521 F.2d 259, (9th Cir. 1975), the Court recognized that 'the sentencing judge has broad discretion in setting probation conditions' and that 'exercise of this discretion is reviewed carefully where probation conditions restrict fundamental rights, but such restriction is permissible.' Moreover, while such limitations would be improper if imposed upon ordinary citizens, probationers 'are probably subject to limitations from which ordinary persons are free.' U.S. v. Consuelo-Gonzales, 521 F.2d at 265.
"However, even if defendant's/probationer's objections were well taken, it is too late to assert them. The defendant should have raised any objections to the conditions of probation when the conditions were imposed and probation granted, not at the revocation hearing. The leading case is Walker v. City ofBirmingham, 388 U.S. 307 [87 S.Ct. 1824, 18 L.Ed.2d 1210] (1967). There, petitioners violated a temporary injunction issued by the Circuit Court, Jefferson County, Alabama. The injunction restrained petitioners from participating in or encouraging mass street parades or processions without a permit, as required by a City of Birmingham, Alabama parade ordinance. In that instance, petitioners did not attempt to secure a parade permit or dissolution or modification of the injunction. Petitioners declared their intentions to disobey the Circuit Court's order and deliberately marched in violation thereof. The next day, the City of Birmingham applied to the Circuit Court for an order to show cause why the petitioners should not be held in contempt for violating the order. Petitioners then sought to attack the constitutionality of the injunction on the ground that it was vague, overbroad and restrained free speech. In addition, they sought to attack the Birmingham parade ordinance upon similar grounds, and further, that previously the ordinance had been administered in an arbitrary and discriminatory manner.
"The Circuit Judge refused to entertain any of these contentions on the basis that there had been no motion to dissolve the injunction, nor had there been an effort to comply with the order by applying for a parade permit. Therefore, the Court found against the petitioners and imposed jail sentences and fines.
"The Alabama Supreme Court affirmed and reiterated that petitioners were charged with violating a temporary injunction, that petitioners did not file any motion to vacate the temporary injunction until after the parades took place and that petitioners deliberately defied the order of the Circuit Court. In so affirming the Circuit Court, the Alabama Supreme Court held that 'until the decision of the circuit court is reversed for error by orderly review, either by Circuit Court or a higher court, the orders of the Circuit Court based on its decision are to be respected and disobedience of them is contempt of its lawful authority, to be punished.' Walker v.City of Birmingham, 388 U.S. at 303 [87 S.Ct. at 1828].
"On appeal, the United States Supreme Court affirmed.
"Here, in Markley, as in Walker, the remedy is to appeal the order, not to defy it. If the defendant/probationer felt that the probation conditions imposed were excessive or unreasonable, the remedy was to timely appeal, and disobedience to the order granting probation constitutes violation of probation. *Page 1048 
"The defendant/probationer has shown that he has no intention of obeying this Court's order. He has shown that he has no remorse for his action.
"This court cannot, under the law of this State, legally reduce the sentence imposed on Father Markley; it has but two choices — either put the sentence into effect or say to the world that this probationer is above the law. As hard as that may be this Court must reject any such notion that justice is not blind.
"This Court has considered all consequences of probation violation and finds that the court has no alternative but to revoke its order of probation[4] and put the sentence into effect or else make a mockery of the law.
"A separate order embodying these conclusions shall issue.
"Done this 16th day of June, 1986.
/s/ J. Richmond Pearson, Judge
Tenth Judicial Circuit of Alabama"
It is from the above opinion and order implementing the original judgment and ordering the appellant to begin serving sentence that he prosecutes this appeal.
 I
Appellant's counsel asserts that the appellant initially objected to the trial judge's sentence of conditional probation on First Amendment grounds. He, therefore, argues that he has not waived his right to assert the invalidity of § 15-22-52, Code of Alabama 1975 on First Amendment grounds. Secondly, appellant's counsel asserts that the appellant's First Amendment rights are too important to be waived by merely accepting the benefits of probations as a result of his initial conviction. Thirdly, appellant's counsel asserts that the 500 yard proviso in the trial court's initial order granting probation violated his First Amendment rights of speech, assembly and association. Fourth, appellant's counsel asserts the trial court erred during the cross-examination of Father Markley by asking certain questions of him with reference to certain newspaper articles which reported the incident in question which resulted in the notice to revoke appellant's probation. We quote record 78-85:
"BY MR. MAHON:
"Q. Father Markley, you heard testimony this morning from three ladies who testified under oath that they saw you on the 18th of January, the 24th of January, the 31st of January and the 8th of February, 1986, outside respective women's clinics. Would you disagree with their testimony that you were there?
"A. No.
"Q. Would you disagree with their estimates of the distance from the property?
"A. No.
"Q. Were you not aware of the conditions of your probations?
"A. No.
"Q. You were aware of the conditions of your probation?
"A. I think so. There seems to be some disagreement about that. The form that I saw that the probation officer gave me said do not go within 500 yards, within 500 yards period while there is a demonstration going on. It seems that I have heard a different version of the wording of that, that it would be possible to go within 500 yards as long as I was not going on the purpose of demonstrating. So there are two different versions of that.
"Q. Is there any doubt that in your mind on the four occasions that we have testimony about that you were in violation of the terms of your probations?
"A. I certainly thought I was closer than 500 yards, yes.
"Q. You knew on those four specific occasions that you were in fact in violation?
"MR. TURBERVILLE: Your Honor, I object to the form of the question.
"THE COURT: Overruled.
"Q. Sir?
"A. I thought I was in violation of it, but I thought I was in violation of the legality *Page 1049 
or the technicality of the probation, but I didn't think I was in violation —
"THE COURT: One at a time, Mr. Mahon.
"A. I thought I was in violation of the technicality or the legality of the wording, but not in violation of what needed to be done, not in violation of the true law, the law of God.
"Q. It is your continuing position that where man's law and God's law conflict, it is your way of thinking that you will follow God's law?
"A. I hope so. With his grace I will sure try.
"MR. MAHON: That's all.
"THE COURT: This is February 8, 1986, and is State's Exhibit 2. Father Markley, is that you?
"A. Yes, sir.
"THE COURT: With the sign?
"A. Yes, sir.
"THE COURT: Where were you?
"A. At the corner of 17th Street and 10th Avenue, South.
"THE COURT: How close were you to the abortion clinic?
"A. A foot or two, Your Honor.
"THE COURT: This is supposedly January 29, 1986. Was that you there?
"A. Yes, sir. That's myself in that picture.
"THE COURT: Where was that?
"A. That's at the abortuary in Huntsville.
"THE COURT: And this is State's Exhibit 1. Mr. Turberville, let's not whisper to the witness while the Court is examining him.
"MR. TURBERVILLE: I'm sorry. I thought you were through.
"THE COURT: Take your seat. I want you to read that and answer me if that is a correct statement of what you said. (Witness read article).
"A. Yes, sir. I think that is a correct answer to the question that he posed at that time, yes, sir.
"THE COURT: Read it. Have a seat, Mr. Turberville.
"A. 'Reverend Edward Markley said yesterday he won't turn himself in for probation violation although a warrant has been issued for this arrest.' "They will have to come and get me," Markley said.'
"THE COURT: Did you say that?
"A. Yes. I don't think I should have had to turn myself in.
"THE COURT: Keep reading.
"A. 'The Roman Catholic priest was ordered to stay at least 500 yards from any abortion clinic in the U.S. "I will not just turn myself in," Markley said yesterday from Saint Bernard Abbey in Cullman. "I was advised to do that before, to be sweet and amicable, but this isn't right, so I am not going to cooperate."'
"THE COURT: Read the next paragraph.
"A. 'Markley participated in abortion protests near abortion clinics in Birmingham January 18th and in Huntsville January 24th.
"THE COURT: Is that true?
"A. Yes, sir.
"THE COURT: You were within 500 feet (sic)?
"A. Yes, sir.
"MR. TURBERVILLE: Judge, 500 yards was the order, not 500 feet.
"THE COURT: I understand that. But 500 feet would certainly be less than 500 yards, would it not?
"MR. TURBERVILLE: Yes, sir.
"THE COURT: Read this, Father Markley, beginning right here (indicating).
"A. 'Markely said he is not afraid to go to jail. Maybe this isn't the best comparison, but it's a lot like a football player in a game. Is he afraid to get hurt? No, he is not afraid. If he were afraid he wouldn't be in the game. When I get mad I don't fear."
"THE COURT: Is that a correct statement?
"A. That's a correct statement.
"THE COURT: When you get mad you don't fear? *Page 1050 
"A. Right. When I get mad I don't fear, that's correct.
"MR. TURBERVILLE: I would ask that you take it from the proper perspective. When he gets mad he doesn't fear. Are we talking about his moral convictions or getting mad at somebody and going out and attacks them. This is altogether different. And certainly this information is going to be in the record, but then the record just reads cold black and white.
"THE COURT: I am asking Father Markley if he did this. You will have an opportunity to examine when I get through, Mr. Turberville. I am tired of you jumping up and interrupting.
"MR. TURBERVILLE: We are trying to —
"THE COURT: Sit down, Mr. Turberville.
"MR. TURBERVILLE: Recognize —
"THE COURT: I don't want to hear anymore from you until it is your time to cross examine or redirect. Read the rest of that, Mr. Markley.
"A. 'He said he thinks of himself more of a witness than a martyr. You know a martyr is someone who loses his life for Christ. I am more of a witness witnessing to the fact that God's creatures are being killed. God went to a lot of trouble to protect and cushion the unborn, he said. The womb is a sanctuary in every sense of the word, and violating that is a violation against God. I want to witness that.'
"THE COURT: Did you say that?
"A. I sure did.
"THE COURT: Father Markley you remember being in this Court when you were on trial and eventually were convicted of two felonies. I believe criminal mischief and burglary?
"A. Yes, sir.
"THE COURT: Do you remember saying then that you became angry?
"A. I don't remember it. I may have. I don't remember it.
"THE COURT: In regard to the reason for the sledge hammer?
"A. I very likely maybe did. I just don't remember specifically using those words.
"THE COURT: But you don't deny that you did go near those clinics depicted in State's Exhibit 1 and 2 to protest what was going on in there?
"A. I don't deny that.
"THE COURT: Do you want to ask any questions, Mr. Turberville? I mean Mr. Underwood?"
Appellant's counsel asserts the trial court erred in directing Father Markley to read from the newspaper and to answer with reference to the accuracy of the report.
In the case of Persall v. State, 31 Ala. App. 309, 16 So.2d 332
(1944) this court defined the conditions of probation as follows:
 "A probation is subject to rejection or acceptance by the convict. He has an unfettered election in that regard, and the court order is not effective or operative until it has been accepted by him. If he prefers to serve out his sentence, as originally imposed upon him, to a suspension of it by subjecting himself to the conditions nominated in the probation, he has the clear right to do so. But if he elects to accept the probation and avails himself of the liberty it confers, he must do so upon the conditions upon which alone it is granted to him. One of these conditions is that his sentence shall continue in fieri, and that the State shall have the power to execute it in full upon him should he forfeit the liberty and immunity conditionally secured to him by the order."
We find that by accepting the conditions of probation as tendered in circuit court following the initial hearing, the appellant must be bound by its terms. In passing upon the First Amendment issues asserted by counsel for appellant, we are guided by the statement set forth in United States v.Consuelo-Gonzalez, 521 F.2d 259 (1975) which states as follows:
 "This guiding interpretive principle plainly suggests the manner in which the Act's administration should be accommodated to the constitutional guarantees of the Bill of Rights. While it must be *Page 1051 
recognized that probationers, like parolees and prisoners, properly are subject to limitations from which ordinary persons are free, it is also true that these limitations in the aggregate must serve the ends of probation. Conditions that unquestionably restrict otherwise inviolable constitutional rights may properly be subject to special scrutiny to determine whether the limitation does in fact serve the dual objectives of rehabilitation and public safety. But this is not to say that there is any presumption, however weak, that such limitations are impermissible. Rather, it is necessary to recognize that when fundamental rights are curbed it must be done sensitively and with a keen appreciation that the infringement must serve the broad purposes of the Probation Act. This burden cannot be avoided by asserting either that the probationer has voluntarily waived his rights by not objecting in a proper manner to the conditions imposed upon him or that he must accept any condition the court 'deems best' as a consequence of being 'in custody'." (Footnotes omitted)
We also note that the Ninth Circuit has upheld the proposition that under the terms of the probation act, a convicted criminal may be subjected as a condition of his probation to restrictions on his expression and associations. See Malone v. United States, 502 F.2d 554 (9th Cir. 1974), cert. denied, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824
(1975).
In line with the foregoing authorities, we find no violation whatsoever of the appellant's constitutional rights as asserted in brief under these cases.
 II
Moreover, we do not agree with the appellant that the trial court imposed conditions unconstitutionally as part of his probation or that the Alabama Statute is unduly restrictive or impowers the circuit court to impose restrictions which violate the appellant's constitutional rights.
Again, referring to the United States Ninth Circuit as set forth in United States v. Lowe, 654 F.2d 562 (1981), we note the following:
 "This court has recognized that the sentencing judge has broad discretion in setting probation conditions. See United States v. Consuelo-Gonzalez, 521 F.2d 259, 264 (9th Cir. 1975). Exercise of this discretion is reviewed carefully where probation conditions restrict fundamental rights, but such restriction is permissible. Id. at 265. The test for validity of probation conditions, even where 'preferred' rights are affected, is whether they are primarily designed to meet the ends of rehabilitation and protection of the public. Id. at n. 14. Similarly, this court has stated that
 "The conditions must be 'reasonably related' to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement. (Citation omitted.)
 "United States v. Pierce, 561 F.2d 735, 739 (9th Cir. 1977)."
 III
Finally, upon examination of the record in this cause, we find that the trial court carefully scrutinized the appellant's actions in light of his First Amendment rights under the United States Constitution.
As noted in the trial judge's findings, the appellant was not precluded in anywise from attending church or, indeed, going near certain places of worship provided he was not at the same point engaged in some type of activity which had been restricted through the initial grant of probation. The appellant had been specifically prohibited from going within 500 yards of an abortion clinic while engaged in some type of demonstration or protest against abortion. The testimony herein quoted clearly establishes that the appellant was knowingly in violation of the terms of his probation and did so without hesitation. *Page 1052 
The courts may lawfully impose conditions upon a party's speech, association or assembly as noted in the opinions herein to preserve public order and for the protection of the accused. See Oyoghok v. Anchorage, 641 P.2d 1267, 28 A.L.R. 4th 717 (1982). See also, United States v. Consuelo-Gonzalez, supra andMalone v. United States, supra and United States v. Lowe, supra.
We have carefully examined all arguments presented in brief and find that the appellant's constitutional rights were here carefully observed by the trial judge. No infringement of any First Amendment right appears in this record. The trial courts are empowered with the authority in Alabama to ask necessary questions from time to time in judicial proceedings. SeeHinkle v. State, 50 Ala. App. 215, 278 So.2d 218 (1973) and authorities cited. This is particularly true where probation proceedings are involved. It requires no citation of authority to observe that the strict rules of evidence are not applicable in such proceedings. Many Alabama cases have so noted.
It, therefore, follows that the memorandum opinion herein set forth declaring that its order of July 1, 1985 granting probation to Edward Markley was properly revoked and the five year sentence in Jefferson Circuit Court No., CC 84-62, was correctly put into effect, all under date of June 16, 1986.
For the reasons hereinabove stated, this cause is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The Alabama Criminal Code classifies burglarly in the second degree as a Class B felony and criminal mischief in the first degree as a Class C felony. Code of Alabama of 1975, § 13A-7-6,13A-7-21.
[2] Birmingham Post-Herald, January 29, 1986.
[3] "Counsel for the probationer spent considerable time quibbling over the reasonableness of the 500 yard restriction. Clearly, the Court could have drawn the line at 250' or 200 yards. This Court had to draw the line somewhere. As the Court in U.S. v.Lowe, said, "line-drawing is best left to the discretion of the sentencing judge."
[4] Persall v. State, 31 Ala. App. 309, 311, 16 So.2d 332 (1944).