STATE of Minnesota, Respondent,

v.

Mary FRIBERG, Bernard Boyle, Jr., Paul Bernabei, Georgia Springer and Paul O'Donnell, Petitioners.

No. C5-87-1703.

Supreme Court of Minnesota.

Jan. 31, 1989.

Barry William McKee, Stillwater, for petitioners.

Patricia A. Rogin, Asst. City Atty., St. Paul, for respondent.

AMDAHL, Chief Justice.

Defendants petitioned this court to review a court of appeals decision which affirmed their conviction for trespassing and

upheld a condition of probation which required them to stay 500 feet away from the premises on which they trespassed, 421 N.W.2d 376. Defendants argued their constitutional right to a speedy trial was violated because trial was delayed for more than 60 days after their demand pursuant to Minn.R.Crim.P. 6.06 and that the limited geographical exclusion made a condition of their probation unreasonably restricted their first amendment rights. We disagree.

Defendants were arrested for trespassing after they staged a "sit-in" in a St. Paul Planned Parenthood clinic on December 23, 1986. A formal complaint was issued and defendants made their first appearance on January 13, 1987. At that time, a pre-trial hearing was scheduled for February 24, 1987. Petitioners appeared *pro se* at the scheduled hearing and requested a continuance so they could retain counsel. The court granted the continuance and scheduled a second pre-trial hearing for March 18, 1987.

At the March hearing, trial was scheduled for May 26, 1987; however, sometime prior to that date, the court assignment clerk contacted defendants' counsel to inform him the trial had to be postponed because no judges would be available during that week. On May 26, 1987, defendants filed a demand for speedy trial and the following day were notified by the court that the trial had been rescheduled for June 22, 1987. On the day the trial was scheduled to begin, defendants filed a notice to remove the judge who was assigned to hear their case. The removal of the judge caused a second delay.

Defendants' counsel was contacted the following day by the assignment clerk and informed that the trial could not be held that same week and that a notice of the new trial date would be sent by mail. The next trial date assigned was August 17, 1987. On August 13, 1987, defendants served upon the prosecutor a motion to dismiss the charges claiming their right to speedy trial had been violated.

Immediately preceding trial on August 17, 1987, the court conducted a hearing on the motion to dismiss and defendants presented testimony about how they had been inconvenienced by having to reschedule work and appointments, rearrange vacation plans, arrange to be absent from work, deal with pressure from employers to get the case concluded and cope with the stress and anxiety of waiting for trial.

During the motion hearing, the trial judge commented on the calendar problems which existed at the time, stating in the record:

> I'm sorry to interrupt you, but I'm on the calendar committee for this district and I'm sure it's to the chagrin of the state that they can't move the cases faster because it is a problem with the number of judges and a lot of the illness on the bench as long as we have sat with two judges' positions that have been vacant for a long time.

The trial court also explained that defendants' case had come into the system at the time the district and municipal courts were being consolidated and there were many scheduling problems. Although the court did not specifically state it would take judicial notice of the calendar congestion, neither the prosecutor nor defendants' attorney disputed its existence. When questioned by the trial judge at the motion hearing, defendants' attorney did not remember whether he had informed the assignment clerk that his clients had filed a demand for speedy trial. The prosecutor explained at the hearing that the assignment clerk customarily contacts the defendant's attorney to arrange trial dates and simply notifies the prosecutor since prosecutors are generally readily available.

The court denied defendants' motion to dismiss from the bench stating that defendants' counsel had been aware of the scheduling problems when the notice of removal was filed and that the anxiety, stress and time lost from work and families was not sufficient prejudice to justify dismissal.

The trial was conducted as scheduled and defendants were convicted of trespassing. The court sentenced each of the defendants to 60 days in the Ramsey County Workhouse but suspended the sentences in lieu

of probation subject to the following conditions: payment of a $330 fine; that defendants remain law-abiding for one year; that defendants not go within 500 feet of the clinic in which they had trespassed; and that defendants each complete 40 hours of community service. Defendants Friberg, Boyle and Springer agreed to the conditions. O'Donnell and Bernabei refused to abide by them and were ordered to serve their workhouse sentences.

On August 28, 1987 defendants' attorney filed a notice of appeal with the court of appeals indicating defendants were appealing the judgment of conviction and the condition of probation which prohibited them from going within 500 feet of the clinic. Sometime after the trial, defendants retained a new attorney who on September 2, 1987 filed a post-trial motion with the trial court to vacate the judgment or in the alternative to modify the conditions of probation.[1] The motion was filed unaccompanied by any supporting affidavits and at the motion hearing conducted September 3, 1987, defendant's counsel presented no evidence. He simply argued the motion and submitted a memorandum to the court and gave no indication that he intended to submit more information to the court at a later time. Nearly two weeks later, on September 14, 1987, defendants' attorney filed an affidavit of the court assignment clerk which stated that if he had been informed that defendants had requested a speedy trial, he would have scheduled the case for trial within the 60–day period. The record contains no information as to whether the trial judge actually received the affidavit before issuing the order denying the motion on September 23, 1987. The findings and conclusions in the trial court's order refer only to the information which was discussed at the hearing.[2]

After the trial court ruled on the post-trial motion, defendants' new attorney filed an amended statement of the case with the court of appeals so as to include in the appeal the trial court's denial of the motion to vacate judgment. The court of appeals affirmed the trial court after which defendants petitioned this court for review.

*Speedy Trial*

The first issue we must consider is whether defendants' right to speedy trial was violated. We hold that Minn.R.Crim.P. 6.06 does not set an arbitrary time limit for speedy trials, violation of which requires dismissal of a case. Rather, the rule provides that delays greater than 60 days after a demand for speedy trial has been made are presumptively prejudicial and require further inquiry to determine whether there was good cause for the delay.

Both the United States and the Minnesota Constitutions guarantee a defendant's right to speedy trial. U.S. Const. amend. VI and XIV; Minn. Const. article 1, § 6. In evaluating this right, the United States Supreme Court has said:

> The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.

*Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972) (citing *Beavers v. Haubert,* 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905)). In *Barker* the Court refused to establish an arbitrary and rigid time period for determining whether the right to speedy trial has been violated and instead adopted a balancing test for reviewing such claims. *Id.* 407 U.S. at 529–530, 92 S.Ct. at 2191–92. The Court directed trial judges to balance the following factors: 1) length of delay; 2) reason for delay; 3) whether the defendant asserted the right; and 4) whether there was any prejudice. *Id.* at 530–32, 92 S.Ct. at 2192–93.

1. It should be noted that once the notice of appeal was filed, the trial court no longer had jurisdiction over the matter. The trial court should have refused to hear the motion to vacate judgment since the judgment of conviction was being appealed.

2. Even if the trial court had received the affidavit, consideration of it would have been improper. Supporting affidavits are to be submitted with a motion, not on an *ex parte* basis after the hearing.

The length of delay, the court explained, is a "triggering mechanism" which determines whether further review is necessary. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191. Where the length of delay is "presumptively prejudicial" there is a necessity for inquiry into the remaining factors of the test. *Id.* at 530–31, 92 S.Ct. at 2191–92. The court made clear that states are "free to prescribe a reasonable period consistent with constitutional standards", but also indicated that trial courts should exercise judicial discretion based on the circumstances in each case. *Id.* at 523, 530, 92 S.Ct. at 2188, 2192.

Minn.R.Crim.P. 6.06 and 11.10 are the procedural rules which define what this court considers a reasonable time for bringing defendants to trial. Both rules provide that defendants "shall be tried within sixty (60) days from the date of the demand unless good cause is shown by the prosecutor or the defendant why he should not be brought to trial within that period." Neither rule defines what constitutes "good cause" nor does either rule mandate any consequence for failure to bring a defendant to trial within sixty days.

Both the "Overview of the Minnesota Rules of Criminal Procedure" and the comments to Rules 6.06 and 11.10 indicate that the rules do not attempt to set arbitrary time limits or specify the consequences of a failure to bring a defendant to trial within the time limits set by the rule and that the determination of whether a defendant has been denied the right to speedy trial is left to judicial decision. Minn. Rules of Court 104, 137 (West 1988). Because the rules were adopted in 1975, after the *Barker* decision, and because the comments specifically refer to *Barker*, we interpret the rule to mean that delays beyond the 60–day limit simply raise the presumption that a violation has occurred and require the trial court to conduct a further inquiry to determine if there has been a violation of the defendant's right to speedy trial.

The dissent contends that the language of the rule is mandatory and creates a procedural right to speedy trial separate from the constitutional right. The language of the rule, however, is not mandatory because it explicitly allows delays longer than sixty days where there is "good cause". If the drafters of the rule had intended the sixty-day limit to be mandatory, they would not have allowed for "good cause" exceptions to be determined by the court.

We must next determine whether there was "good cause" for the delay in this case. The language in Rule 6.06 is identical to that in Rule 11.10 and the comments to Rule 11.10 are incorporated by reference as comments to Rule 6.06. This court has consistently used the *Barker* factors to determine whether there was "good cause" for a greater than sixty day delay in felony cases and we see no reason not to require the same analysis in misdemeanor cases.

Once the delay is determined to be presumptively prejudicial by exceeding the sixty-day limit set forth in the rule, the remaining *Barker* factors to be reviewed are the reasons for delay, the defendant's assertion of the right and the extent and seriousness of prejudice suffered.

■ Here the trial court attributed the delay to the crowded court calendar and the defendant's removal of the judge on the day trial was to have begun. Where calendar congestion is the reason for delay, it weighs less heavily against the state than would deliberate attempts to delay trial. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. We have found that calendar congestion or other circumstances over which the prosecutor has no control are good cause for delays up to fourteen months where the defendants suffered no unfair prejudice. *See State v. Jones*, 392 N.W.2d 224, 234–36 (Minn.1986) (seven month delay did not violate right to speedy trial where defendant asserted right but court system was overburdened and no unfair prejudice resulted); *State v. Helenbolt*, 334 N.W.2d 400, 405–406 (Minn.1983) (fourteen month delay did not violate right to speedy trial where delay was caused by state's pre-trial appeal and the only serious prejudice was faulty memory of state's witness); *State v. Rossbach*, 288 N.W.2d 714, 716 (Minn.1980) (no denial of right to speedy trial where

defendant was responsible for 5 of the 7 month delay and court calendar was overcrowded); *State v. Corarito,* 268 N.W.2d 79, 80 (Minn.1978) (six month delay did not violate right to speedy trial where prosecutor was not trying to hamper the defense).[3]

The court of appeals has also considered numerous speedy trial cases including some misdemeanor cases and has consistently applied the *Barker* analysis to determine whether there have been constitutional violations. Until now, however, this court has considered only one misdemeanor case involving a claim of denial of the right to speedy trial. *State v. Kasper,* 411 N.W. 2d 182 (Minn.1987). Kasper's trial was delayed 140 days, substantially longer than the defendants here, the reason for the delay was not calendar congestion and the defendant did nothing to contribute to the delay. Furthermore, in *Kasper* the prosecutor engaged in "legal maneuvering" in an obvious attempt to circumvent Rule 6.06 by dismissing the original tab charges for DWI and issuing a formal complaint. We were presented with a certified question from the trial court asking whether the issuance of the formal complaint began another sixty-day period under Rule 6.06. We held that it did not. *Id.* at 185.

The dissent contends that our failure to recite the *Barker* factors in *Kasper* impliedly recognized that violation of the sixty-day limit in Rule 6.06 could be reason for dismissal. When we considered the facts in *Kasper,* there was no need to specifically recite the *Barker* factors because it was patently obvious that Kasper's right to a speedy trial would have been violated if the prosecutor's maneuver had been allowed to go unchecked. Deliberate tactics such as those used in *Kasper* cannot constitute the good cause intended by the rule and weigh heavily against the party causing the delay.

Here there were no such delaying tactics by the prosecutor. The trial court found that the delay was caused in part by the court's crowded calendar. The finding was based on the trial judge's own information by virtue of her participation on the calendar committee. The record indicates that during argument by defendants' attorney and before the prosecutor had the opportunity to address the question of the cause for delay, the trial judge commented about the court's crowded calendar and apparently took judicial notice of that information. It is unfortunate that there were several procedural problems with the way this information was received. First, there was no specific reference made to the fact the court would take judicial notice of the calendar problems. Second, the prosecutor did not adopt the court's explanation for the delay. While it would have been a better practice for the court to specifically state its intention to take judicial notice of certain facts and for the prosecutor to adopt the court's explanation as good cause for the delay, the comments were made at the hearing and not refuted or challenged by either party indicating that there was no disagreement with the fact of the court's crowded calendar.[4] The trial court's finding that the delay was caused by calendar congestion is supported by the record and the conclusion that a scheduling delay over which the prosecutor had no control should not weigh heavily against the state was not erroneous.

The second reason for delay considered by the trial court was defendants' eleventh hour removal of the judge scheduled to

---

**3.** We note that the rules of criminal procedure were adopted and several of the cases were decided when criminal trial calendars were controlled by prosecutors. Since court administrators have been responsible for setting trial calendars, prosecutors have no more opportunity to influence when trials are scheduled than do defendants. Accordingly, because the rule was apparently intended to prevent abuses of defendants' speedy trial rights by prosecutors, it is somewhat outdated and should perhaps be amended to allow the court to demonstrate good cause for delays.

**4.** The only other information related to the court's crowded calendar was the improperly submitted affidavit of an assignment clerk which was submitted by defendants' second attorney two weeks after the post-trial motion hearing and after appeal had been taken. The prosecutor had no opportunity to refute the information in the affidavit.

conduct their trial on June 22, 1987.[5] The trial court weighed this reason against the defendants. The removal of the judge, although it was certainly within the rights of defendants, necessarily required that the trial be rescheduled. In the process of rescheduling, defendant's attorney was contacted by the clerk and failed to mention the fact that his clients had made a demand for speedy trial. While we do not minimize the responsibility of the court and the prosecutor to see that cases are brought to trial, we also do not believe that defense attorneys should be allowed to sit on their hands and acquiesce in the scheduling of trial dates they know are past the sixty-days prescribed by Rule 6.06. At a minimum, counsel notified of a trial date setting which is beyond the 60 day speedy trial requirement should notify the assignment clerk of the speedy trial demand. The trial court properly determined that the defendants' attorney's failure to alert the assignment clerk of the demand weighs against defendants.

■ The third factor, defendant's assertion of the right, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93. There is no dispute that defendants asserted their demand for speedy trial and that defendants are not required to continuously reassert their demand. Nonetheless, the frequency and force of a demand must be considered when weighing this factor and the strength of the demand is likely to reflect the seriousness and extent of the prejudice which has resulted. *Id.* at 529, 531, 92 S.Ct. at 2191, 2192.

Defendants' demand here involved no more than filing a notice of demand for speedy trial two months after their plea of not guilty. Defendants' attorney, after waiting until the day of trial to remove the judge, failed to bring to the assignment clerk's attention that a demand had been made when the trial date was being rescheduled even though it was common knowledge that the court calendar was crowded because of the recent consolidation of the municipal and district courts. This minimal effort lends support to the trial court's conclusion that defendants did not suffer serious prejudice from the delay of trial.

The trial court record adequately supports the conclusion that the defendants had not suffered any serious prejudice from the delay. The only prejudice attested to at the hearing was the stress, anxiety and inconvenience experienced by anyone who is involved in a trial. Because the delay in no way affected the strength of defendants' case, the final *Barker* factor does not favor defendants.

Considering the *Barker* factors in light of all the circumstances, we find that the trial court did not abuse its discretion by ruling that there was good cause for the delay and that defendants were not denied their right to a speedy trial. The delay was not deliberately caused by the state, defendants' own trial tactics contributed to the delay and they suffered no prejudice.

*Condition of Probation*

We must next consider whether the condition of probation imposed by the trial court which required defendants to stay 500 feet away from the clinic unduly restricted their First Amendment rights. Trial courts have great discretion in the imposition of a sentence and appellate courts cannot substitute their judgment for that of the trial court in the imposition of a sentence. *Steeves v. State*, 287 Minn. 476, 480, 178 N.W.2d 723, 725 (1970).

Generally, conditions of probation must be reasonably related to the purposes of sentencing and must not be unduly restrictive of the probationer's liberty or autonomy. Conditions of probation may include

---

5. We characterize the defendants' removal of the judge as eleventh hour because it was not noticed until the day trial was scheduled to begin. The dissent points out that it was not eleventh hour because there were 33 days remaining in the 60–day period from when the demand for speedy trial had been made. There were, no doubt, trials already scheduled for those remaining 33 days. Had defendants filed their notice of removal earlier, it would obviously have been easier to schedule another trial date within the 60–day period.

restrictions upon employment or business activities, places the probationer may frequent and even people with whom the probationer may associate. ABA Standards for Criminal Justice 18–2.3(f) (1980). Although they do not entirely give up their constitutional rights, the rights of probationers are properly "subject to limitations from which ordinary persons are free * * *." *United States v. Consuelo–Gonzalez,* 521 F.2d 259, 265 (9th Cir.1975). The discretion of the trial court in establishing conditions of probation is reviewed carefully, however, when the conditions restrict fundamental rights. *Id.*

■ The condition objected to here is a limited geographical exclusion which prohibits defendants from going within 500 feet of the clinic property on which they trespassed. This condition admittedly affects defendants' first amendment rights but we do not find it to be an unreasonable restriction and there is nothing in the record to indicate that the restriction presented any particular problems for defendants. The trial court granted exceptions to the exclusion to allow two defendants to frequent a bank and a library which were within the excluded area.[6]

The validity of geographical exclusions as conditions of probation is an issue of first impression before this court. The test adopted by the court of appeals to consider the validity of probation conditions containing limited geographical exclusions involved the following factors:

1) the purpose sought to be served by probation;

2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and

3) the legitimate needs of law enforcement.

*State v. Friberg,* 421 N.W.2d 376, 380 (Minn.App.1988) (citing *United States v. Lowe,* 654 F.2d 562, 567 (9th Cir.1981)).

In *Lowe* the defendants were convicted of trespassing on a naval submarine base during a protest of the Trident weapons system and the condition of probation which prohibited them from going within 250 feet of the base was upheld because it did not prohibit their continued participation in the anti-nuclear movement or all anti-nuclear speech. The *Lowe* court held that the 250 foot limitation created a reasonable buffer zone in which probation violations and repeat offenses could be differentiated from the probationers when they are involved in lawful protest activities. *Lowe,* 654 F.2d at 568.

The instant case meets both the ABA Standards and the *Lowe* test. The condition was reasonably related to the purpose of sentencing and did not unreasonably restrict defendants' fundamental rights. The purpose of sentencing is to prevent future unlawful conduct by defendants and establish reasonable consequences for their unlawful conduct. The trial court's obvious intent in imposing the geographical exclusion was to prevent defendants from committing repeated offenses and to protect the clinic employees and patients from further unwanted intrusions. Such a restriction is reasonable where defendants have by their criminal conduct demonstrated their inability to refrain from unlawful activity when they are involved in protest activities.

The condition was reasonable because it did not prohibit defendants' continued participation in anti-abortion protest activities and it did not prohibit all anti-abortion speech. In fact, the court made it clear that defendants would be free to continue their participation in anti-abortion activities in other locations and granted two of the defendants exemptions from the condition so they could frequent a nearby bank and library. The protection of clinic employees and patients from future intrusions and harassment by petitioners who

---

6. We note that the grant of probation was not required and the court's power included the authority to sentence the defendants without considering the alternative of probation. The defendants' geographical freedom would be

vastly more curtailed had the court decided not to grant probation. Furthermore, the decision whether to accept the probation with its condition was solely that of the defendants.

admittedly planned to trespass as part of their protest and the detection of probation violations and repeat offenses are legitimate law enforcement objectives.

The *Lowe* test has been applied by numerous state and federal courts which have considered geographical exclusions. The degree and specificity of restrictiveness varies considerably. In *Crabb v. State*, 754 S.W.2d 742 (Tex.Ct.App.1988), a condition of probation prohibiting defendants convicted of trespass from picketing at the same abortion clinic was upheld. In *Markley v. State*, 507 So.2d 1043 (Ala.Crim.App.1987), a person convicted of burglary and criminal mischief was prohibited from participating in any anti-abortion picketing. Some courts have even upheld conditions of probation which restrict the probationer's right to associate with certain people and groups. *See, e.g., Malone v. United States*, 502 F.2d 554 (9th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975) (defendant prohibited from associating with the Irish Republican Army and from going to certain Irish pubs); *State v. Martinez*, 59 Haw. 366, 580 P.2d 1282 (1978) (condition that probationer refrain from company of people of questionable character upheld).

The condition imposed by the trial court here does not restrict all anti-abortion activity nor does it restrict defendants' right to associate with anti-abortion groups. It simply requires that for one year they stay at least 500 feet from the particular location at which they trespassed. After careful consideration, we find that the condition of probation imposed by the trial court here does not unduly restrict defendants' first amendment rights. It is reasonably directed at keeping the peace and deterring future criminal activity. We therefore uphold the limited geographical exclusion as a valid condition of probation.

AFFIRMED.

POPOVICH, Justice (dissenting).

I regret I must respectfully dissent from both holdings in the majority opinion. Defendants were denied their right to a trial within 60 days under Minn.R.Crim.P. 6.06 and the conditions of their probation were unconstitutional. It is my view that Rule 6.06 establishes an independent nonconstitutionally based procedural right, which in this case has been violated.

1. The majority admits the defendants made a demand for a speedy trial and the state failed to meet that demand when it did not provide a trial within 60 days as mandated by Rule 6.06, Minn.R.Crim.P.[1] The majority reasons, however, that the 60–day time period is not an arbitrary time limitation but, rather, merely creates a presumption that the defendant has been prejudiced by the delay.

The majority goes on to apply to this case the factors given in *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972), for determining whether the sixth amendment right to a speedy trial has been violated. The majority equates a "good cause" finding justifying a delay under the rule with the balancing test in *Barker*. Thus, under the majority's reasoning, a violation of Rule 6.06 is nothing more than a triggering mechanism for a constitutional analysis of the delay in question, using the factors given in *Barker*. The majority reaches this conclusion despite the mandatory language in Rule 6.06.[2] The majority relies on language in *Barker* and the commentary to Rule 11.10, Minn.R.Crim.P., which is incorporated by reference in the commentary to

1. The rule provides, in pertinent part:
   A defendant shall be tried as soon as possible after entry of a not guilty plea. On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the defendant shall be tried within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or defendant why he should not be brought to trial within that period.

2. The majority's characterization of Rule 6.06 as not mandatory is difficult to understand. The rule is clear on its face; once a demand is made, a trial must begin within 60 days unless either party can show good cause for the delay. That there is a "good cause" exception to this rule does not make the rule's application "voluntary."

Rule 6.06, to support its conclusion that the 60–day time period is not a *per se* rule, whose violation has consequences independent of constitutional analysis.

The majority's reliance on *Barker* is unfounded. *Barker* specifically recognized that the states, unlike the Supreme Court, were free to set *rigid* time periods in which criminal trials must be brought. *Barker*, 407 U.S. at 523, 92 S.Ct. at 2188. Thus, nothing in *Barker* can be read as limiting the effect of the 60–day time period specified in Rule 6.06.

The comments relied on by the majority provide: "The existence or absence of the demand under Rule 11.10 provides a factor that may be taken into account in determining whether the defendant has been unconstitutionally denied a speedy trial." Comment to Rule 11.10, Minn.R.Crim.P. The constitutional question, however, does not answer whether "good cause" has been shown for a violation of the procedural time limit as required by Rule 6.06. The procedural violation is an entirely different question than the constitutional question. The commentary suggests this distinction where it states, "a defendant shall be brought to trial within 60 days after demand * * *, unless good cause is shown for a delay * * *." *Id.* Contrary to the majority's contention that Rule 6.06 does not set an arbitrary time limit, the commentary makes clear that is precisely what the rule does: "Rule 11.10 does not attempt to set arbitrary time limits (*other than those resulting from the demand*) * * *." *Id.* (emphasis added).

The only way to reconcile the commentary's conflicting language is by recognizing that a violation of the procedural rule is not equivalent to a violation of a defendant's constitutional right to a speedy trial. Nothing in the rule or the commentary suggests the 60–day limit is meaningless unless there is a constitutional deprivation. That the 60–day limit itself could be the source of a dismissal was implicitly recognized by this court in *State v. Kasper*, 411 N.W.2d 182 (Minn.1987). In *Kasper*, we explicitly recognized that the constitution did not require a specific time period in which the state must commence trial. *Id.* at 184 (citing *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972)). We noted, however, that *Barker* permitted states to prescribe reasonable time periods. *Id.* We said Minnesota had codified such a time period in Rule 6.06. *Id.* No further mention of *Barker*, its factors, or of the constitutional right to a speedy trial was mentioned in *Kasper*. Indeed, our decision was quite clear: "We hold that defendant was denied a speedy trial *under Rule 6.06* * * *." *Id.* at 185 (emphasis added). The majority's reading of *Kasper* means that this court barred the state from pursuing a prosecution, reversed a lower court, and gave judicial gloss to Rule 6.06, all for constitutional reasons, without ever mentioning that our decision was based on the constitution. I believe *Kasper* stands for the proposition that violation of the procedural time limit can result in dismissal without resort to application of the *Barker* factors. To hold otherwise would reduce Rule 6.06 to mere surplusage. Thus, Rule 6.06 should be directly applied to this case to determine if the state showed "good cause" for violating the rule's mandate.

2. Rule 6.06, unlike the balancing test in *Barker*, places the burden for explaining a delay squarely on the state; the state must show "good cause" for the delay. I conclude from the above analysis of *Barker*, the commentary to Rule 6.06 and Minnesota case law that there is no authority for equating "good cause" to the *Barker* factors. None of the cases cited by the majority even mention a "good cause" showing, much less equate such a showing to the *Barker* factors. Under the majority's formula no violation of Rule 6.06 would be cognizable until such time as the right to a speedy trial had been violated. Thus, Rule 6.06 would be nothing more than a recodification of the sixth and fourteenth amendments, in my opinion an untenable position.

The majority relies on the trial judge's personal knowledge of "crowded dockets" and the defendants' "eleventh hour" motion to remove the trial judge, to show good cause existed for the delay. As an

initial matter, the defendants' motion to remove came 33 days before the expiration of the 60–day limit, hardly an eleventh-hour delaying tactic [3] vis-a-vis the 60–day time limit at issue in this case. More importantly, the condition of the court dockets is not a fact which is subject to judicial notice in the manner it was done here.

Rule 201(b), Minn.R.Evid., describes what type of adjudicative facts may be "noticed" by a judge:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The condition of the Ramsey County District Court calendar, based on the trial judge's recollection, does not fall under either type of fact which may be noticed. Additionally, the trial judge's assessment was apparently wrong, as the affidavit of Mike Calvert, criminal case manager for Ramsey County, shows.[4] The comment to Rule 201 states, "Minnesota has traditionally limited judicial notice of adjudicative facts to situations incapable of serious dispute." Obviously, here the condition of the court calendar is in dispute. Absent such facts, there is virtually no evidence on which the state can base a showing of good cause for the delay. Where the state fails to show good cause for the delay, our decision in *Kasper* requires dismissal.

3. While the United States Supreme Court has not had occasion to rule broadly on the constitutional rights of probationers, these questions have been answered as to prisoners. I look to these prisoner cases for guidance in analyzing the rights of the instant probationers. "Prison walls do not form a barrier separating prison inmates from the protections of the constitution." *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Specifically, prisoners retain the protections of the first amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). It is obvious that probationers retain a broader range of rights than do prisoners. *See generally,* Hurwitz, *House Arrest: A Critical Analysis of an Intermediate–Level Penal Sanction,* 135 U.Pa.L.Rev. 771, 796 (1987). Thus, any limitation on the instant petitioners' first amendment rights of expression and religious freedom cannot be justified by suggesting that probationers have somehow lost these rights.[5]

The United States Supreme Court has not articulated a test for reviewing probation conditions which infringe first amendment rights. Again, the prisoner rights cases are instructive by analogy. Limitations on prisoners' constitutional rights are justified by the fact of incarceration and valid penological objectives, including deterrence of crime, rehabilitation, and institutional security. *O'Lone,* 107 S.Ct. at 2404. "There must be a 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

In formulating a standard of review, the Court takes special cognizance of the extreme complexity and urgent problems involved in prison administration, which courts are ill-equipped to handle. *Turner,* 107 S.Ct. at 2259. Additionally, prison administration raises separation of powers concerns because it is within the province of the executive and legislative branches of

---

**3.** The majority suggests other cases were scheduled during 33 days following the removal. Since the state failed to adduce *any* evidence on the condition of the court's calendar, we will never know the true status of that calendar.

**4.** The majority focuses on the procedural problems with Mr. Calvert's affidavit. Surely, if the trial judge could take notice of erroneous information concerning the court calendar, this court could take notice of the correct information of which we have personal knowledge from reading Calvert's affidavit.

**5.** Similarly, the fact that the state might have constitutionally incarcerated defendants does not justify a lesser but unconstitutional intrusion of their rights. *See United States v. Tolla,* 781 F.2d 29, 33 (2nd Cir.1986); *United States v. Pastore,* 537 F.2d 675, 683 (2nd Cir.1976); *Hurwitz, supra,* at 796–97.

government. *Id.* Accordingly, deference to prison authorities is required. *Id.*

The Court in *Turner* determined that a "reasonableness" test was appropriate. *Id.* at 2261. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* The Court requires that there be a logical, valid and rational connection to a legitimate governmental interest which is not so remote as to make the regulation arbitrary. *Id.* at 2262.

The test in the prisoner rights cases is instructive because the state's legitimate interests in a probation case are much less significant. When evaluating probation conditions, which limit constitutional rights, the state's legitimate interest in prison security and order, and limitations incident to the fact of incarceration, are entirely absent. Moreover, the reviewing court need not defer to any special expertise possessed by the trial court. Finally, concerns over the separation of powers are also absent in the probation context. Thus, these important differences between the probation and prison cases suggest that in order to justify an infringement of a constitutional right in a probation context, more is required than the reasonableness test described in *Turner; i.e.,* more is required than a mere logical and valid relationship between the condition and the legitimate interest.

The majority relies on federal court of appeals decisions of similar issues in advancing its reasonableness test for probation conditions. *United States v. Lowe,* 654 F.2d 562, 568 (9th Cir.1981). No case, however, suggests that the "reasonableness" test as described in *Turner* is the same as used in *Lowe.* Indeed, many court of appeals decisions, while applying their

reasonableness test, have made it clear that infringement of probationers' first amendment rights requires close or special scrutiny or that such limitations must be narrowly drawn. *See United States v. Terrigno,* 838 F.2d 371, 374 (9th Cir.1988); *United States v. Tolla,* 781 F.2d 29, 34 (2nd Cir.1986); *United States v. Holloway,* 740 F.2d 1373, 1383 (6th Cir.1984) (special scrutiny); *United States v. Lawson,* 670 F.2d 923, 930 (10th Cir.1982) (special scrutiny); *United States v. Pastore,* 537 F.2d 675, 681 (2nd Cir.1976). Even *United States v. Consuelo–Gonzalez,* 521 F.2d 259 (9th Cir. 1975), cited in part by the majority, says: "Conditions that unquestionably restrict otherwise inviolable constitutional rights may properly be subject to special scrutiny to determine whether the limitation does in fact serve the dual objectives of rehabilitation and public safety." *Id.* at 265.[6]

In view of the special scrutiny used when applying the reasonableness test, I can only conclude that the proper standard of review was not followed in evaluating the conflicting interests presented in this case. The reasonableness test used in probation cases requires probation conditions which infringe constitutional rights to be "especially fine-tuned." *Tolla,* 781 F.2d at 34. Such conditions may not be presumed valid. *Id.* The 500–foot buffer zone in this case does not pass the heightened scrutiny suggested in the cases. The only legitimate interest served by the buffer zone in this case is the avoidance of another possible trespassing event. It cannot be explained how a buffer zone of 500 feet as opposed to a 20-foot zone, or no zone at all, enhances this goal sufficiently to justify cutting off the defendants' first amendment rights to lawfully protest the practices of this clinic. The availability of an obvious condition, a

6. The majority concedes that the condition restricts the defendants' first amendment rights. The United States Supreme Court has suggested that first amendment expression, even when it comes in the form of illegal acts, cannot be limited by legislative act unless the act "furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to

the furtherance of that interest." *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968); *see also Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969). I cannot understand why the trial court's decision in this case should receive a lesser standard of scrutiny than the legislative acts of Congress in *O'Brien* or the State of Iowa in *Tinker.*

smaller buffer zone, or picketing in a manner to allow ingress and egress, which would have a *de minimis* effect on the state's legitimate interest, would be sufficient reason to find this limitation unconstitutional in a prison context.[7] *See Turner*, 107 S.Ct. at 2263–64, 2266. Since probation conditions deserve more exacting scrutiny than do prison regulations, the 500–foot limitation in this case cannot survive heightened scrutiny and must be rejected.

Even assuming there was no "speedy trial" issue involved in this case, I would remand to the trial court for a reconsideration of the probation condition. The trial court should be instructed to create a condition which infringes the defendants' first amendment rights no more than is necessary to significantly advance legitimate state interests.

KELLEY, Justice.

I join the dissent of Justice Popovich.

YETKA, Justice.

I join the dissent of Justice Popovich.

---

**7.** In the prison context the presence of such alternatives may require finding the regulation unconstitutional. *See Turner, supra.* I submit in the probation context, where heightened scrutiny is appropriate, the presence of easy and obvious alternatives requires modification of the probation condition at issue.